IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES G. HART, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:14CV00160 SWW |
| | * | |
| FARMERS INSURANCE EXCHANGE, | * | |
| TRUCK INSURANCE EXCHANGE, FIRE | * | |
| INSURANCE EXCHANGE, MID-CENTURY | * | |
| INSURANCE COMPANY, FARMERS NEW | * | |
| WORLD LIFE INSURANCE COMPANY, | * | |
| INC., PATRICIA GAYLE GRAVES, and | * | |
| ROD JOHNSON, | * | |
| | * | |
| Defendants. | * | |

**Opinion and Order**

Plaintiff Charles G. Hart ("Hart") brings this race discrimination action  pursuant to 42

U.S.C. § 1981 and the Arkansas Civil Rights Act, Ark. Code Ann. §16-123-101 *et seq.*

("ACRA").  He also brings a state law claim of tortious interference with a business expectancy.

The defendants are Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance

Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company,

Farmers Insurance Company, Inc. (collectively "Farmers"), Patricia Gayle Graves, and Rod

Johnson.  Before the Court is defendants' motion for summary judgment, Hart's response, and

defendants' reply.  After careful consideration, and for the reasons that follow, defendants'

motion is granted in part and denied in part.  Hart's race discrimination claim is dismissed with

prejudice, and Hart's supplemental claim is dismissed without prejudice.

**Background**[1]

Hart was an independent contractor agent appointed by Farmers to sell Farmers insurance policies.  He became a Farmers agent in 2001.  The Agent Appointment Agreement ("Agreement") Hart signed provides, in part, that he has an obligation to "furnish insurance services to all policyholders of the Companies . . . in such a manner as to advance the interests of the policyholders, the Agent and the Companies."  The Agreement permits termination by either party upon thirty days written notice in the event of a breach by the other party.  It also permits either the agent or Farmers to terminate the Agreement upon three months notice for any reason.

Separate Defendant Gayle Graves is an independent contractor Farmers District Manager located in Little Rock, Arkansas.  Hart's Farmers agency was assigned to Graves's Farmers district.  On July 18, 2013, Graves returned a telephone call from a Farmers customer, "Ms. R." Ms. R told Graves that Hart raped her in his Farmers agency office.  According to Graves, Ms. R told her that she reported the rape to law enforcement and gave Graves a police report number. Hart knows Ms. R's full name.

Graves says that within minutes of her conversation with Ms. R, she called Separate Defendant Rod Johnson, the Agency Development Manager, to tell him of the allegations. Johnson obtained a copy of the police report which identified the offense as rape and lists Hart as the suspect.  On July 22, 2013, Graves and Johnson met with Hart to discuss the allegations.  At that time, Hart denied raping Ms. R. According to Johnson's notes from the July 22 meeting, Hart admitted to having sex with Ms. R in his office.  On July 24, 2013, Johnson sent an email to

---

[1]The undisputed facts are taken from Defendants' Statement of Undisputed Material Facts (ECF No.16) and Hart's Response to Defendants' Statement of Undisputed Material Facts (ECF No. 18), unless otherwise noted.

Paul Crosetti, who was the Head of Farmers Mid-Central Territory, and to Keith Gockel, a consultant in Farmers Home Office Agencies, requesting authority to terminate Hart's agency. Johnson attached to the email his notes from the meeting with Hart and a summary of what Hart said during the meeting.   Johnson described Hart's actions as "unacceptable and not normal good business practices."  Crosetti gave Johnson permission to terminate Hart's agency.  By letter dated August 2, 2013, Farmers notified Hart that it was terminating the Agreement upon three months written notice.

In addition to claiming his termination was racially motivated, Hart alleges defendants discriminated against him in 2011 in the re-assignment of policies.  When Farmers terminated Allen Kerr, an independent contractor Farmers agent, it re-assigned Kerr's policies to other Farmers agents.  Graves was responsible for proposing policy re-assignments for the majority of the policies assigned to Kerr's agency.  Johnson had to approve each proposed re-assignment. Hart complains Graves assigned him only three of Kerr's policies while the rest went to white agents.  He says one white agent received 224 of Kerr's policies and another white agent received 427.  Hart claims race was a factor in the decision on re-distribution of the policies.

### Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id* at 587 (quoting Fed.R.Civ.P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RBSI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

### Discussion

Discrimination claims brought under 42 U.S.C. §1981 and the ACRA are analyzed in the same manner as claims under Title VII. *See Anderson v. Durham D & M, LLC*, 606 F.3d 513, 520 -521 (8th Cir. 2010)(Title VII and § 1981 analyzed the same); *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 677 (8th Cir. 2013)(disparate treatment claims under Title VII and the ACRA analyzed in the same manner). To survive an employer's motion for summary judgment, an employee may produce direct evidence of discrimination. "If the employee lacks direct evidence of discrimination, he can survive summary judgment by showing a genuine dispute for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McCullough v. Univ. of Arkansas for Med, Sciences*, 559 F.3d 855, 860 (8th Cir. 2009).

Because there is no direct evidence of discrimination, the Court proceeds to the *McDonnell Douglas* analysis, under which Hart first must establish a *prima facie* case of discrimination. In order to do that, Hart must show that he: (1) is a member of a protected group;

(2) was meeting the legitimate expectations for his position; (3) suffered an adverse action; and (4) the circumstances give rise to an inference of discrimination.  *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 680-81 (8th Cir. 2012).  If  Hart can establish a *prima facie* case, then the burden of production shifts to Farmers to articulate a legitimate, nondiscriminatory reason for its actions.  If Farmers meets this burden, then Hart must show that Farmers's proffered reason for its actions is a pretext for unlawful discrimination.  *McCullough*, 559 F.3d at 860.

 Assuming Hart has established the first three elements of his *prima facie* case, the question is whether he has presented evidence sufficient to create a genuine issue of material fact as to the fourth element.  "At the inference-of-discrimination stage, '[a] plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.'" *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir.2014)(quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).  "This Court has two lines of cases on the standard to determine whether employees are 'similarly situated' at the prima facie stage of the *McDonnell Douglas* test.'  "One line sets a 'low threshold,' requiring only that the employees are 'involved in or accused of the same or similar conduct and are disciplined in different ways.' 'The other line more rigorously requires that the employees be 'similarly situated in all respects.'' *Pye v. Nu Aire, Inc.*,  641 F.3d 1011, 1019 (8th cir. 2011)(internal citations and quotations omitted).

 Hart argues that unlike other agents who were terminated, he was not accused of a serious offense, one that would directly impact the profitability of the company.  He also argues the agents were not terminated until an investigation confirmed that the agent actually engaged

in the wrongful conduct.[2]  Defendants argue that Hart admitted to having sex with a Farmers customer in his Farmers office during business hours and that he cannot identify any other agent who engaged in the same misconduct but received more favorable treatment.  Although Hart agrees that he admitted during his deposition that he had sex in his office with Ms. R, he did not admit to that conduct during his meeting with Graves and Johnson. Hart said that on the advice of his attorney, he told Graves and Johnson he could not talk about the rape allegation because it was an ongoing investigation.[3]  He says he denied having ever had sex with Ms. R before and said he told Johnson he had never had sex in the office before.[4]   Hart asserts Farmers could not reasonably have concluded that he had engaged in that conduct at the time it terminated his agency.  He argues it was the allegation of rape that spurned the decision to terminate him.  Hart argues that if Johnson did not believe he had committed rape, Johnson would not have testified that he was uncomfortable with having Graves accompany him to Hart's office to provide him with the termination letter.   Hart argues that Johnson must have had a "racial bias [and] implicitly believed that African-American Hart was guilty of rape and he felt uncomfortable for his white colleague to be near him."[5]

Hart also takes issue with Farmers's assertion that Crosetti was the decision-maker and asserts that the District Manager, Graves, is the person charged with recommending agent termination, not Johnson, the Agency Development Manager.  This "irregularity," Hart argues,

---

[2]Pl's. Resp. to Defs.' Mot. Summ. J. (ECF No. 17-10) at 4.

[3]Defs.' Mot. Summ. J., Ex. D (Hart Dep.) at 52.  ECF No. 14-4 at 6.

[4]*Id*. at 56. ECF No. 14-4 at 10.

[5]Pl's. Resp. to Defs.'Mot. Summ. J (ECF No. 17-10) at 14.

creates an inference of discrimination.  Hart argues that Farmers did not engage in the kind of

investigation it typically does before terminating an agent, and asserts that other agents have

engaged in conduct much more serious than his and were not terminated.  He cannot identify any

agents who engaged in the same conduct as he and were treated more favorably.  The Court

concludes Hart has not shown circumstances that would give rise to an inference of racial

discrimination with regard to Farmers's decision to terminate him.

Even if Hart could establish a *prima facie* case of discrimination, Farmers has articulated

a legitimate non-discriminatory reason for terminating Hart's agency.  It is undisputed that a

Farmers customer filed a complaint with the police accusing Hart of raping her in his office.  At

the time of their decision to terminate his agency, defendants believed that Hart had sex in his

office on the date in question with a customer. Whether Crosetti carefully reviewed Johnson's

request to terminate Hart before he gave his approval does not create a genuine dispute of

material fact as to pretext.   "[E]mployers are free to make their own business decisions, even

inefficient ones, so long as they do not discriminate unlawfully."  *Handebrink v. Brown Shoe

Co.*, 110 F.3d 644, 646 (8th Cir. 1997).  The proper inquiry is not whether an employer was

wrong in its conclusions or reasoning.  *See Johnson v. AT&T Corp.*, 422 F.3d 756, 762-63 (8th

Cir. 2005).  The proper inquiry is whether the employer honestly believed the employee engaged

in misconduct.  *Id*.

The Court finds that Hart fails to establish a *prima facie* case of race discrimination and

fails to establish there is a genuine issue of material fact as to pretext as to his termination.

As to re-assignment of policies, Farmers contends Hart cannot establish a *prima facie*

case because he cannot show that similarly situated white agents were treated more favorably.

7

Hart argues that statistical evidence establishes an inference of discrimination.  At the time

Kerr's agency was terminated, he had approximately 4,159 policies in force.[6]  Of those 4,159

policies, 4,120 were re-assigned to non African-American agents.  Only three African-

Americans in Hart's district got any policies; he received three.  He complains that several white

agents in his district received a very large number of policies.  Hart argues the gross disparity in

the distribution of policies gives rise to an inference of discrimination.

Defendants argue that because all the agents were not similarly situated, Hart's "bottom

line" tally is not sufficient to establish a *prima facie* case.  In making the re-assignments, Graves

testified she took into account a number of factors, including whether the agent had a financial

services license, whether the agent employed one or more licensed and appointed staff members

to assist in handling an influx of policies, whether the agent's office facilities were on par with

Kerr's, and  the geographic proximity of the policyholder to the agent, if the other factors

supported re-assignment.[7]  The plaintiffs in *Morgan v. United Parcel Serv. of America, Inc.*, 380

F.3d 459 (8th Cir. 2004), were a class of black UPS center managers who complained that there

was racial disparity in promotions.  The Eighth Circuit said: "To avoid summary judgment under

the disparate-treatment model through the use of statistics, Plaintiffs must show that '[w]hen the

proper labor market is considered, the statistical evidence is sufficient to raise an inference of

discrimination.'" *Id*. at 465 (citation omitted).  The *Morgan* plaintiffs "offered evidence that in

thirty-five of UPS's districts, there were no blacks promoted to division manager between 1989

and 1998." *Id*. at 464.  The Eighth Circuit noted that the district court properly found problems

---

[6]*Id*.,  Ex. G. ECF No. 17-8.

[7]Defs.'Mot.Summ.J., Ex. B (Graves Decl.). ECF No. 14-2.

with the analysis, including the fact that the "tally did not take into account whether there were any qualified black employees available for promotion in those districts." *Id*.  The Eighth Circuit explained: "The upward mobility classes consist of center managers who have not been promoted to division manager.  Thus, the probative inquiry involves a comparison between the percentage of division managers who are black in the population from which division managers are chosen.  As the district court held, 'plaintiff's reliance on a bottom line racial imbalance in the workforce is insufficient to establish that blacks are less likely to be promoted.'" *Id*. at 464-465.  In affirming summary judgment for UPS, the Eighth Circuit said that in order to be legally sufficient, "the plaintiffs' statistical evidence 'must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination.'"  *Id*. at 463-464 (citations omitted).

Here, Hart fails to raise an inference of discrimination.  Nor can he establish a genuine issue of material fact in dispute as to pretext.  Farmers explained the method it used for determining the reassignments and Hart has no proof to support a finding that the reasons were a pretext for racial discrimination.

Because the Court finds no issues for trial with respect to Hart's race discrimination claim over which this Court has original jurisdiction, that claim will be dismissed, with prejudice.  The Court will dismiss Hart's supplemental tortious interference with a business expectancy claim, which he brings pursuant to state law, without prejudice.  *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .".

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [ECF No. 14] is granted in part and denied in part.  Plaintiff's race discrimination claim, brought pursuant to 42 U.S.C. § 1981 and the Arkansas Civil Rights Act, is dismissed with prejudice, and plaintiff's claim for tortious interference with business expectancy is denied without prejudice. A separate Judgment shall be entered.

DATED this 9th day of April, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE